Abdelilah ABDELRHMAN,
et al., Appellants,

v.

Nathan Robert ACKERMAN,
et al., Appellees,

and

Abdelilah Abdelrhman, Appellant,

v.

1826 Bladensburg Road, LLC, Appellee.

Nos. 11–CV–1169, 11–CV–1180.

District of Columbia Court of Appeals.

Argued Oct. 23, 2012.
Decided Sept. 26, 2013.

Peggy A. Marquardt, with whom Michael Brand, Washington, DC, was on the brief, for appellants.

Eric A. Eisen, Bethesda, MD, for appellees Nathan Robert Ackerman, The Nathan Robert Ackerman Family Trust, and The Muriel Ackerman Family Trust.

James L. Parsons, Jr., with whom Joseph A. Lynott, III, Rockville, MD, and Brian D. Riger, Bethesda, MD, were on the brief, for appellee 1826 Bladensburg Road, LLC.

Before FISHER, OBERLY, and McLEESE, Associate Judges.

FISHER, Associate Judge:

Appellants Abdelilah Abdelrhman and Iron Cab, Inc., challenge the dismissal of their lawsuit arising from a dispute over a lease of commercial property. They also claim that they were wrongfully evicted from the property. We disagree and affirm the judgments.

## I. BACKGROUND

The present dispute arose from a commercial lease of property located at 1810 Bladensburg Road, Northeast, which appellant Abdelrhman intended to use for his auto repair business, Iron Cab, Inc. In March 2010, Richard Ackerman, acting on behalf of the owners, negotiated a five-year lease of the property with Abdelrhman.[1]

The original version of the lease included a handwritten clause that stated: "Sale of property. In the event property is un-

---

1. Richard Ackerman was acting on behalf of Nathan Robert Ackerman, trustee of the Na-

der contract to be sold, lessor will provide lessee 60 day notice before terminating lease w/ option to renegotiate lease with new owners." Abdelrhman refused to sign anything that allowed unilateral termination of the lease by a subsequent purchaser of the property.

Ackerman then presented Abdelrhman with a revised agreement that omitted the earlier handwritten provision but included an addendum:

In the event of any sale of the Building, Building Area, or any part thereof, by virtue of judicial proceedings or otherwise, this Lease Agreement shall, at the option of the purchaser, continue in force and effect and tenant thereunder will, upon request, acknowledge the purchaser or purchasers as landlords hereunder.

Abdelrhman signed the revised agreement and this addendum on April 7, 2010. Both versions of the lease included a paragraph twenty-one entitled "Heirs, Assigns, Successors," which stated, "This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties." Abdelrhman's lease term began May 1, 2010.

In July 2010, Ackerman proposed another amendment to the April 7 lease, ostensibly to facilitate transfer of the property to a future purchaser. The proposed amendment stated in pertinent part, "The parties have agreed to modify the Lease ... to clarify the rights of the purchaser of the termination provisions in the Lease in the event the Premises or building in which such Premises shall be sold," and provided that a third party purchaser could terminate the lease with thirty days' notice. Abdelrhman refused to sign the amendment.

Sometime in September 2010, a man named Andy Schaeffer told Abdelrhman that a company called 1900 Bladensburg Road Limited Partnership intended to purchase the property and offered him $120,000 as a "Lease Termination Fee" to vacate early, but Abdelrhman refused. Abdelrhman would later learn that Schaeffer was also an agent of 1826 Bladensburg Road, LLC [hereinafter "Bladensburg"], which purchased the property from the Ackermans in December 2010.

After the sale of the property, Bladensburg terminated the lease and served appellant Abdelrhman with notice to quit. The process server submitted an affidavit attesting that he made two attempts at personal service at the property during business hours. When those attempts failed, he posted notices to quit at the property and at appellant's home, and mailed notices to both addresses. Abdelrhman acknowledged that he had received both mailed copies of the notice.

Bladensburg sued for possession. Appellants then sued both Bladensburg and the Ackermans in a separate action, and the suits were consolidated. In their complaint, appellants requested a declaratory judgment that they were entitled to remain on the premises because Bladensburg was not entitled to terminate the lease unilaterally. They also alleged that Bladensburg had breached the contract, the duty of good faith and fair dealing, and the covenant of quiet enjoyment, and that the Ackermans had breached the duty of good faith and fair dealing. Appellants also claimed wrongful eviction due to invalid service of the notice to quit.

Superior Court Judge Ramsey Johnson dismissed appellants' claims against the

than Robert Ackerman Family Trust and the Muriel Ackerman Family Trust [collectively

"the Ackermans"].

Ackermans for failure to state a claim on which relief could be granted, stating, "the language of the Addendum clearly gives a third party purchaser the option of enforcing or terminating the Lease." In a subsequent omnibus order, Judge Johnson denied appellants' motion to reconsider and dismissed all of appellants' claims against appellee Bladensburg. The trial court based its judgment on the clarity of the Lease Addendum's language: "granting a third party purchaser the *option* to continue the Lease also means giving it the *option* to terminate it and . . . no reasonable person could find otherwise." After a hearing on September 9, 2011, the trial court also orally granted appellee Bladensburg's motion for judgment of possession, concluding that there had been adequate service of the notice to quit. Appellants were evicted on November 12, 2011.

## II. ANALYSIS

We review *de novo* the trial court's grant of a motion to dismiss pursuant to Super. Ct. Civ. R. 12(b)(6). *Harnett v. Washington Harbour Condo. Unit Owners' Ass'n*, 54 A.3d 1165, 1171 (D.C.2012). To withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C.2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In examining the sufficiency of the complaint, the court may consider the complaint itself and any documents it incorporates by reference. *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 178 (D.C.2006).

We likewise review the grant of a motion for summary judgment *de novo,* and affirm the judgment only if there is no genuine issue of material fact remaining after taking all inferences in favor of the non-movant. Super. Ct. Civ. R. 56(c); *Onyeoziri v. Spivok*, 44 A.3d 279, 283–84 (D.C.2012). The proponent bears the burden of demonstrating that no such issue of fact exists, and may do so by adducing supporting evidence such as affidavits or depositions. Super. Ct. Civ. R. 56(e); *Maupin v. Haylock*, 931 A.2d 1039, 1042 (D.C.2007).

### A. Claims Based on the Contractual Language

The central controversy in this appeal is whether the trial court should have considered extrinsic evidence in interpreting the lease. Appellants claim "that a reasonable person in the position of the parties with knowledge of all of the circumstances surrounding the making of the Lease Agreement and Lease Addendum would not interpret [them] as providing a third party purchaser with the option of unilaterally terminating the Lease Agreement." Although our case law discussing the use of extrinsic evidence appears to point in different directions, we conclude that the end result is the same—that Bladensburg was entitled to terminate the lease.

We analyze leases of real property according to established principles of contract law. *Capital City Mortg. Corp. v. Habana Village Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C.2000). "The proper interpretation of a contract, including whether a contract is ambiguous, is a legal question, which this court reviews *de novo*." *Tillery v. District of Columbia Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C.2006); *cf. 1010 Potomac Assocs. v. Grocery Mfrs. of Am.*, 485 A.2d 199, 205 (D.C.1984) ("[T]he interpretation of an integrated contract is a question of law unless it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence," as when a threshold factual finding must be made to properly

interpret the contractual provision at hand).

■■ This jurisdiction has long employed an "objective law" of contracts, *Joyner v. Estate of Johnson*, 36 A.3d 851, 855–56 (D.C.2012), meaning that "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake," *Dyer v. Bilaal*, 983 A.2d 349, 354–55 (D.C.2009); *accord, Tillery*, 912 A.2d at 1176.[2] In interpreting contractual language, we adhere to the parol evidence rule, which limits the court's analysis to the plain meaning of the language on the face of a fully integrated contract.[3] *Tillery*, 912 A.2d at 1176. "[E]xtrinsic or parol evidence which tends to contradict, vary, add to, or subtract from the terms of a written contract must be excluded ... [and] is inadmissible to vary or contradict the terms of a valid, and plain and unambiguous, written contract." *Segal Wholesale v. United Drug Serv.*, 933 A.2d 780, 783 (D.C.2007) (internal quotation marks and citations omitted).

### 1. Meaning of "At the Option of the Purchaser"

■■ Appellants assert that the trial court wrongly refused to consider evidence extrinsic to the contract in determining the meaning of "at the option of the purchaser," which the parties agreed was determinative of whether Bladensburg was entitled to terminate the lease. Citing a subset of our cases that have allowed more liberal use of extrinsic evidence, appellants urged the trial court to consider statements made in the course of negotiation of the contract to determine what a reasonable person in the parties' circumstances would have believed the Lease Addendum meant. *See, e.g., Patterson v. District of Columbia*, 795 A.2d 681, 683 (D.C.2002) ("[T]he objective reasonable person assessing the contract's language is presumed to know all the circumstances before and contemporaneous with the making of the agreement, and extrinsic evidence is admissible to determine the nature of those circumstances.") (internal quotation marks and citations omitted). Appellees maintain that the court did consider the surrounding circumstances to determine how a reasonable person would interpret the language, but avoided considering evidence of subjective intent to vary or contradict the terms of the agreement. *See id.* ("extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous").

Admittedly, our cases have not been a model of clarity in explaining the parol evidence rule.[4] *Compare Dyer*, 983 A.2d

---

2. Appellants have not alleged fraud, duress, or mutual mistake.

3. The lease includes an integration clause, and neither party contests that the agreement before us is fully integrated. *See Drake v. McNair*, 993 A.2d 607, 622 (D.C.2010) ("[I]n the absence of a showing that a parol representation made during negotiations by a party to a completely integrated contract was omitted from the contract by fraud, mistake, or accident ... the opposing party is barred from relying on such a representation as material to its acceptance of the deal and from

claiming that its reliance on it was reasonable.").

4. We are not alone in this regard. *See* 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 33:1 (4th ed. 1993 & Supp. 2012) ("The [parol evidence] doctrine is of ancient origin and may be simply stated, but its application is complex, enigmatic, perplexing, and confusing. Due in part to its paradoxical nature and in part to judicial misunderstanding regarding both when its invocation is proper and its scope, the application of the parol evidence rule over

at 355 (if contractual language " 'is facially unambiguous, we must rely solely upon its language as providing the best objective manifestation of the parties' intent' ") (quoting *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C.1984)), *and Tillery*, 912 A.2d at 1176 ("[W]e examine the document on its face, giving the language used its plain meaning."), *with Patterson*, 795 A.2d at 683 ("This reasonableness determination involving an evaluation of the surrounding circumstances is to be applied whether the contract's language appears ambiguous or not.") (internal quotation marks and citations omitted). We have recognized that "confusion sometimes arises because of a failure to distinguish clearly between direct evidence as to what a particular party intended the language to mean, a subjective question, and evidence of the general situation, the relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties, all of which may be useful aids in determining whether objectively the meaning of the contract language 'is not susceptible of a clear and definite undertaking.' " *Ozerol v. Howard Univ.*, 545 A.2d 638, 642 (D.C.1988) (quoting Restatement (Second) of Contracts § 212 comment b) ("It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context.").

We need not attempt in this case to harmonize our various decisions because we reach the same conclusion regardless of our approach. Neither the contractual language nor the surrounding circumstances support appellant's claim that "option," rather than implying the normal binary choice, restricts the purchaser's choices to (1) continuing the lease as written or (2) continuing it on renegotiated terms.

■ We agree with the trial court's assessment that the text is unambiguous on its face. The Addendum bestows upon Bladensburg, as purchaser of the property, the option to continue the Lease Agreement—or not. An option "usually signifies a right exercisable by one ... party, not by both acting in concert," *Sanders v. Molla*, 985 A.2d 439, 442 (D.C.2009), and we "must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract," *Bragdon v. Twenty–Five Twelve Assocs. Ltd. P'ship*, 856 A.2d 1165, 1170 (D.C.2004) (internal quotation marks omitted).

Even giving appellants the benefit of more permissive versions of the parol evidence rule [5] does not change the objective meaning of the words the parties chose to articulate their agreement. Most of the circumstances surrounding the making of the contract are alleged in the amended complaint. Accepting these allegations as true, and assuming the truth of other ex-

---

the centuries has resulted in thousands of decisions which are at best difficult to reconcile with one another and at worst flatly incorrect.").

5. *See, e.g., Debnam v. Crane Co.*, 976 A.2d 193, 197 (D.C.2009) ("Extrinsic evidence may be used to determine the circumstances surrounding the making of the contract[;] however, it may not be relied upon to show the subjective intent of the parties absent ambiguity in the contract's language.") (internal quo-

tation marks omitted); *Christacos v. Blackie's House of Beef, Inc.*, 583 A.2d 191, 194 (D.C. 1990) ("[A]lthough extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous, extrinsic evidence may be considered to determine the circumstances surrounding the making of the contract so that it may be ascertained what a reasonable person in the position of the parties would have thought the words meant.") (internal quotation marks and alterations omitted).

trinsic evidence proffered to the trial court, does not alter our conclusion that the trial court properly interpreted the term "at the option of the purchaser." [6]

Although appellants are careful to avoid saying so directly, their argument urges us to delve into Abdelrhman's subjective intent. What they really claim is that Abdelrhman would not have signed the lease addendum if he had thought it meant that the purchaser would have a unilateral right to terminate the lease. But we do not reach the issue of the parties' subjective intent where the text is unambiguous. *Capital City Mortg. Corp.*, 747 A.2d at 570 ("We have stressed on other occasions, moreover—in responding to what the tenant really is asking us to do here—that under no circumstances will extrinsic evidence be admissible to reveal the subjective intent of a party to a contract unambiguous on its face."). Indeed, "[a] party's unexpressed intent is irrelevant" if a contract's language is clear on its face. *Dyer*, 983 A.2d at 355 (citing *Bolling Fed. Credit Union*, 475 A.2d at 385). And "[a] contract is not rendered ambiguous merely because the parties disagree over its proper interpretation." *Parker v. U.S. Trust Co.*, 30 A.3d 147, 150 (D.C.2011) (quoting *Gryce v. Lavine*, 675 A.2d 67, 69 (D.C. 1996)). Moreover, appellants' "objective" reading of the provision—that the purchaser may either adhere to the lease or may renegotiate it, but cannot terminate it—is implausible.

To be sure, it is puzzling that Abdelrhman, having refused to sign a lease that included an explicit termination clause, would sign the version before us. It is equally confounding that he has not claimed fraud in the inducement or mutual mistake in the formation of the contract, both of which would be consistent with his version of events and allow us to consider the parties' subjective intent. *See Isaac v. First Nat'l Bank of Md.*, 647 A.2d 1159, 1162–63 & nn. 8–10 (D.C.1994) (discussing necessary proof of intent of parties to demonstrate mutual mistake or fraud and available remedies). However, such claims might nullify the contract and thereby narrow appellant's potential remedies. Whatever the reasons for their litigation strategy, we are limited to the claims that appellants have pleaded, and there is nothing within them that would allow Abdelrhman's subjective understanding of the contract to trump its plain meaning.

### 2. Binding Upon Successors in Interest

Appellants also assert that the addendum conflicts with paragraph twenty-one of the lease, which governs the rights and duties of "successors in interest." At oral argument, appellee Bladensburg conceded that it became a successor in interest to the Ackermans before the lease was terminated. Appellants therefore would have us find ambiguity in the supposed conflict between the two provisions. We

6. Because this is an integrated contract, Abdelrhman's reliance upon oral representations Ackerman allegedly made about the meaning of the Addendum cannot alter the plain meaning of the contractual language. *See Drake v. McNair, supra* note 3. And while Ackerman's private email exchanges with an advisor might reveal Ackerman's subjective intentions, they were not known to Abdelrhman at the time and cannot illuminate the circumstances surrounding the making of the contract. *See Sutton v. Banner Life Ins. Co.*, 686 A.2d 1045, 1050 (D.C.1996) ("Essentially, the parol evidence rule excludes proof of facts and subjective intentions not shared by the parties...."). Appellants' citations to evidence of representations made subsequent to the formation of the contract are similarly unavailing. *See Patterson*, 795 A.2d at 683 (allowing for consideration of extrinsic evidence to illuminate "the circumstances *before and contemporaneous with* the making of the agreement") (emphasis added).

are not persuaded by appellants' argument.

When interpreting a contract, we "strive to give reasonable effect to all its parts and eschew an interpretation that would render part of it meaningless or incompatible with the contract as a whole." *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C.2012) (internal quotation marks omitted). Moreover, "we apply a familiar principle of contract interpretation, that 'specific terms and exact terms are given greater weight than general language.'" *Washington Auto. Co. v. 1828 L St. Assocs.*, 906 A.2d 869, 880 (D.C.2006) (quoting Restatement (Second) of Contracts § 203(c) (1981)). *See also* Restatement, § 203(d) ("added terms are given greater weight than standardized terms"). "[W]here both the specific and general provisions may be given reasonable effect, both are to be retained." *Ohio Power Co. v. FERC*, 744 F.2d 162, 168 n. 7 (D.C.Cir. 1984). However, where they "stand irreconcilably in conflict[,]" "specific clauses prevail over general clauses[.]" *Id.*

Applying these principles, there is no necessary conflict or ambiguity when these provisions are read together. Pursuant to paragraph twenty-one, appellee Bladensburg assumed the rights and responsibilities embodied in the lease, including those found in the addendum, which gives a purchaser of the property the option of electing not to continue the lease in force and effect. Reading the provisions in this fashion gives both of them reasonable effect. If one were to conclude, however, that the provisions are in conflict, the addendum, which more specifically addresses the situation before us, would prevail. We therefore conclude that the "successors in interest" provision does not create ambiguity.

## B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Appellants argue that the Ackermans violated their duty of good faith and fair dealing under the contract by representing to Bladensburg that a purchaser of the property could terminate the lease.[7] We see no legal basis for appellants' claim and affirm its dismissal.

"[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Hais v. Smith*, 547 A.2d 986, 987 (D.C.1988) (internal quotation marks omitted).[8] "To state a

---

7. Although appellants arguably forfeited this claim by failing to raise it in their opening brief, we will exercise our discretion to review the merits of their claims. *See Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 312 n. 5 (D.C.1984) (considering merits although noting that issues raised for the first time in a reply brief "clearly exceeded the permissible scope of the reply brief" under D.C.App. R. 28(c)).

8. We are not persuaded by appellants' claim that Richard Ackerman breached his duty of good faith and fair dealing during their pre-contract negotiations. Under the common law, there is no general duty of good faith prior to the formation of a contract. *See* Restatement (Second) of Contracts § 205(c)

("Particular forms of bad faith in bargaining are the subjects of rules as to capacity to contract, mutual assent and consideration and of rules as to invalidating causes such as fraud and duress.... [R]emedies for bad faith in the absence of agreement are found in the law of torts or restitution.") (internal citations omitted); *see also Parr v. Ebrahimian*, 774 F.Supp.2d 234, 244 (D.D.C.2011) ("Such misrepresentations, however, are alleged to have occurred prior to the formation of the sale contract, and so would constitute, if anything, bad faith in negotiation, which is not a violation of the implied contractual duty of good faith and fair dealing.") (internal citation omitted). Such a duty may arise only in particular circumstances—as when parties request reassurances or agree to a letter of

claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C.2013). Ackerman's alleged representation conformed to the terms of the contract. A truthful representation regarding the meaning of the contract could not frustrate appellants' enjoyment of the benefits of the contract, nor could it fairly be characterized as arbitrary or capricious or made in bad faith. Accordingly, we affirm the judgment dismissing appellants' complaint.

### C. Service of the Notice to Quit

 With all their substantive claims dismissed, appellants' only recourse in the possessory action was to contest the adequacy of service of the notice to quit. We agree with the trial court's assessment that service of the notice to quit was sufficient. Bladensburg's process server provided an affidavit that his two efforts at personal service during business hours on separate days failed, and consequently he posted notice on the door of the leased premises and mailed a copy to the premises as well. Out of an abundance of caution, appellee also posted the notice on Abdelrhman's home and mailed a copy to that address.

The statute authorizes posting and mailing as acceptable alternatives when personal service cannot be made. D.C.Code § 42–3206 (2001); *see Lynch v. Bernstein*, 48 A.2d 467, 467–68 (D.C.1946) (notice to quit residential premises sufficient where server attempted personal service at 10 p.m. and again at 11 p.m. the same evening and, when those efforts proved unsuccessful, posted notice on the door); *contrast*

*Russell v. Dep't of Hous. & Urban Dev.*, 836 A.2d 576, 579 (D.C.2003) (insufficient service of notice to quit where "HUD placed in evidence no proof—by affidavit or otherwise—that it had attempted personal service on Russell before posting the notice and mailing it."); *Moody v. Winchester Mgmt. Corp.*, 321 A.2d 562, 564 (D.C.1974) (insufficient alternative to personal service where server slipped notice under the door of the premises rather than posting it as required by statute).

Nor is appellant Abdelrhman's affidavit sufficient to raise a genuine issue of material fact as to the adequacy of service. With respect to personal service, Abdelrhman's attestations are in general terms—regarding what he "usually" or "sometimes" does, but admitting that he "cannot specifically recall whether [he] was [at the property]" at the times when service was attempted. While Abdelrhman does state that "a mechanic for Iron Cab[ ] was present" at the times of service but was not given the notice to quit, he does not provide details explaining why this person would have been a suitable substitute recipient for personal service. Moreover, he does not demonstrate personal knowledge that the mechanic was on the premises at the relevant hours, as Abdelrhman admits he is unsure of his own whereabouts at those times.

Abdelrhman's attempt to show that notice was not in fact posted is similarly inadequate—he says only that he "never saw" the posted notice, and, while he says that "[t]here are several doors" to the property, and that the "door in the back of the building is rarely, if ever, used," he does not describe that door in a manner that would allow the court to match it to

---

intent. *See, e.g., A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chem. Grp., Inc.*, 873 F.2d 155, 158–60 (7th Cir. 1989) (citing cases from multiple jurisdictions where letter of intent bound parties to negoti-

ate in good faith). Appellants have not demonstrated why their pre-formation negotiations should be entitled to the benefit of such an expansion of the doctrine, and this portion of their claim fails as a matter of law.

the description given by the process server. Accordingly, he has not raised a genuine issue of material fact as to whether the posting was made "in some conspicuous place" on the premises. *See* D.C.Code § 42–3206.[9]

 Finally, Abdelrhman admitted that he received both mailed copies of the notice. Although actual notice alone may not cure defects in service, *see Jones v. Brawner Co.*, 435 A.2d 54, 56 (D.C.1981) (actual receipt by tenant when notice slipped under door irrelevant to validity of notice); *Moody*, 321 A.2d at 563 (valid service of notice to quit is "a condition precedent to the landlord's suit for possession"), the statute does provide for the use of multiple methods of service, all designed to convey actual notice. Abdelrhman's admission demonstrates that the alternative method of service was effective, and that he cannot demonstrate prejudice. *See Lynch*, 48 A.2d at 468 ("We are not to be understood as holding that receipt of notice constitutes a waiver of the requirements of the statute for substituted service. Such receipt, however, shows that the purpose of the statute was accomplished.").

Accordingly, we affirm the judgment of possession.

### III. CONCLUSION

The judgments of the Superior Court are hereby

*Affirmed.*

Opinion by Associate Judge McLEESE, concurring in part and dissenting in part.

McLEESE, Associate Judge, concurring in part and dissenting in part:

I agree that the trial court correctly dismissed the claim of breach of the implied covenant of good faith and the challenge to service of the notice to quit. *Ante* at 891–93. I respectfully dissent, however, from this court's decision to uphold the dismissal of the breach-of-contract claim. *Ante* at 887–91. I would hold that, when considered as a whole, the language of the lease at issue was ambiguous and that extrinsic evidence therefore should be considered in interpreting that language. I would therefore reverse and remand for further proceedings.

It is common ground that extrinsic evidence may be considered in determining the meaning of an ambiguous contract. *Ante* at 887–88. In my view, the lease is ambiguous when the addendum and paragraph twenty-one of the lease are read together, as they must be. *See generally, e.g., Waterside Towers Resident Ass'n Inc. v. Trilon Plaza Co.*, 2 A.3d 1084, 1089 n. 20 (D.C.2010) ("We consider contracts in their entirety.").

The addendum provides:

In the event of any sale of the Building, Building Area, or any part thereof, by virtue of judicial proceedings or otherwise, this Lease Agreement shall, at the option of the purchaser, continue in force and effect and tenant thereunder will, upon request, acknowledge the purchaser or purchasers as landlords hereunder.

---

9. Despite the fact that the notice was not duplicated in Spanish as the statute requires, we have held that this does automatically invalidate notice to commercial tenants like appellants, especially where appellant Abdelrhman has not alleged that he speaks Spanish. *See Ontell v. Capitol Hill E.W. Ltd. P'ship*, 527 A.2d 1292, 1296 (D.C.1987) ("We

are particularly reluctant to invalidate a commercial tenant's notice to quit when the failure to translate into Spanish has created absolutely no prejudice to the tenant. In the instant case, there is no factual dispute that [appellant] reads and understands English, and, indeed, does not read or understand Spanish.").

The addendum thus explicitly addresses only the situation in which a new purchaser wants the lease to remain in effect, making clear that in such circumstances the lease does remain in effect and the tenant must acknowledge the new purchaser as landlord. I acknowledge that, when the addendum is considered in isolation, the word "option" implies that the new purchaser could also choose to terminate the lease. But the addendum does not explicitly state that a new purchaser can unilaterally terminate the lease; that is simply an implication of the addendum.

In contrast, paragraph twenty-one of the lease explicitly states that "This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties." [1] On the surface, there is a conflict between what the addendum seems to imply—that new purchasers may opt to terminate the lease—and what paragraph twenty-one explicitly states—that new purchasers, as successors in interest, are bound by the lease. It is well settled that such conflicts among different provisions in a contract can give rise to contractual ambiguity. *See, e.g., Hayes v. Home Life Ins. Co.,* 83 U.S.App.D.C. 110, 111, 168 F.2d 152, 153 (1948) ("But since the clauses are conflicting, an ambiguity in the contract is created."); *see also E.A. Baker Co. v. Haft,* 578 A.2d 706, 706–08 (D.C. 1990) (per curiam) (finding contract ambiguous based on existence of apparent conflict between two provisions); *Scowcroft Grp. v. Toreador Res. Co.,* 666 F.Supp.2d 39, 44 (D.D.C.2009) (denying motion to dismiss; "The Court finds that the Contract is ambiguously worded—the two sentences relevant to this claim appear to at least partially contradict one another.").

I agree with the court that the addendum can be viewed as more specific than paragraph twenty-one. *Ante* at 891. I thus also accept the potential relevance of the principle of contractual interpretation giving greater weight to specific provisions than to general ones. *Id.* at 890–91. In my view, however, that principle is not dispositive in the circumstances of this case. *Cf. generally Yerington v. La–Z–Boy, Inc.,* 124 S.W.3d 517, 521–23 (Mo.Ct. App.2004) (finding contract ambiguous where apparent conflict between general language and more specific language). In particular, I do not believe that this court should rely on the implication of a specific provision as unambiguously trumping the express statement of a more general provision. To the contrary, there is substantial support for the principle that express language is generally entitled to great weight, particularly as compared to the possible implications of language. *See, e.g., United Int'l Investigative Servs., Inc. v. United States,* 42 Fed.Cl. 73, 85 (1998) ("Express language trumps implications."); *A.J. Sweet of La Crosse, Inc. v. Industrial Comm'n,* 16 Wis.2d 98, 114 N.W.2d 141, 147 (1962) ("[I]f it is necessary, in interpreting a written contract, to resort to implication in order to find a particular unstated promise, the written agreement is ambiguous in this respect."); *Weathers v. Patterson,* 30 Ala. 404, 407 (1857) ("To so hold[ ] would be to give greater weight to an implication than to the express language of the testator. We think no such construction can be indulged."); *cf. Restatement (Second) of Contracts* § 203(b) (1981) ("express terms are given greater weight").

The court also states that there is no necessary conflict between the addendum and paragraph twenty-one. *Ante* at 891. As the court explains, paragraph twenty-

---

1. As the court notes, *ante* at 890–91, appellee Bladensburg concededly is a successor in interest.

one requires that binding effect be given to the lease in its entirety, including the addendum. *Id.* Thus, the court in effect concludes, paragraph twenty-one means that, although new purchasers are bound by the lease, the lease also provides that they can opt out and therefore are not ultimately bound by the lease unless they wish to be. The court's proposed reading is a possible, though rather convoluted, way of trying to reconcile the two provisions. It is not, however, the only possible reading that would give reasonable effect to both provisions. For example, the addendum could be understood as simply clarifying that any new purchaser will have the duties and rights of a landlord and that the tenant upon request must so acknowledge. *See generally Restatement (Second) of Contracts* § 203 cmt. b ("The preference for an interpretation which gives meaning to every part of an agreement does not mean that every part is assumed to have legal consequences.... [I]t is enough that each provision has a meaning to [the parties] as a guide to performance."); *cf. Public Citizen, Inc. v. Rubber Mfrs. Ass'n,* 382 U.S.App.D.C. 338, 346, 533 F.3d 810, 818 (2008) ("As the Supreme Court has recognized, a provision that may at first glance appear to be textual surplusage[ ] may in fact 'perform ... a significant function simply by clarifying.'") (quoting *United States v. Atlantic Research Corp.,* 551 U.S. 128, 137, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007)).

In sum, I would conclude that the lease, considered as a whole, is sufficiently ambiguous that extrinsic evidence should be considered. I therefore would remand so that the lease can be interpreted not solely based on its seemingly conflicting terms, but also based on consideration of other evidence that is potentially quite relevant to the interpretation of the lease as a whole. Such evidence would include (a) evidence that Mr. Abdelrhman refused to sign the lease when it contained a provision explicitly providing that a new purchaser could unilaterally terminate the lease and (b) evidence that Mr. Abdelrhman stated that he would not sign any lease that permitted such unilateral termination. *Ante* at 885–86. Because the court instead upholds the dismissal of the breach-of-contract claim as a matter of law, I respectfully dissent.