**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 22-1004, 22-1015

IN RE: AMERICAN CENTER FOR CIVIL JUSTICE, INC.,
Debtor

_____

AMERICAN CENTER FOR CIVIL JUSTICE, INC.,
Appellant

v.

JOSHUA AMBUSH,
Cross-Appellant

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3-21-cv-02267)
U.S. District Judge: Honorable Freda L. Wolfson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
On December 8, 2022

Before: SHWARTZ, MATEY, and FUENTES, *Circuit Judges*

(Filed: March 9, 2023)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

FUENTES, *Circuit Judge*.

This breach of contract action arises from a decades-long and litigious relationship between American Center for Civil Justice, Inc. ("ACCJ"), a chapter 11 bankruptcy debtor, and Joshua Ambush, an attorney. In 2012, Ambush and ACCJ agreed to settle a lawsuit between them and refrain from future litigation against one another related to the subject matter of the settled claims. ACCJ alleges that Ambush breached that settlement by bringing subsequent litigation against ACCJ and its interests. The Bankruptcy and District Courts held that no such breach occurred. We agree and will affirm.

## I. Factual Background[1]

Appellant ACCJ is a not-for-profit organization that provides legal funding to victims of state-sponsored terrorism in exchange for a share of any successful recovery.[2] In the mid-2000s, ACCJ agreed to assist several victims of the 1972 Lod Airport Massacre with pursuing a suit against the Syrian government (the "*Franqui* Action").[3] Cross-Appellant Ambush represented certain plaintiffs in the *Franqui* Action.[4]

In 2009, ACCJ filed a suit against Ambush related to legal fees from the *Franqui* Action, generally alleging that Ambush deceptively convinced the *Franqui* plaintiffs to sign retainer agreements with Ambush and revoke powers of attorney with ACCJ (the

---

[1] We presume the parties' familiarity with the extensive factual record and recite only those facts necessary to resolve this appeal.

[2] *See Am. Ctr. for Civ. Just., Inc. v. Ambush*, No. 18-cv-15691, 2020 WL 1652244, at *2 (Bankr. D.N.J. Mar. 23, 2020).

[3] *See Vega-Franqui v. Syrian Arab Republic*, No. 06-cv-734 (D.D.C.) (filed Apr. 21, 2006).

[4] *Ambush*, 2020 WL 1652244, at *2.

"2009 Action").[5] The parties settled the 2009 Action on or around September 12, 2012 via a settlement agreement providing, in relevant part, as follows:

> Neither Ambush, on the one hand, or [ACCJ], on the other hand, . . . shall encourage, sponsor, initiate, or finance . . . any form of claim or litigation against the other arising out of or related to the subject matter of the [2009 Action] or the *Franqui* Litigation or the services performed by any of the parties in connection with the *Franqui* Litigation[.] . . . Any action to enforce [this] remedy . . . shall be filed in the United States District Court for the District of Columbia . . . and shall include the request that the case be assigned to the judge . . . who presided over the [2009 Action].

(the "Settlement Agreement"). The agreement states that it "shall be construed and applied in accordance with the laws of the District of Columbia."

Over the ensuing decade, Ambush took three actions that ACCJ characterizes as a breach of the Settlement Agreement. First, in April 2013, Ambush moved to intervene in a Puerto Rico estate action involving members of the "Guzman Estate," captioned *Domenech-Guzman v. Guzman-Ramos* (the "*Domenech* Action").[6] The Guzman Estate received an award of damages in *Franqui*, and ACCJ had previously intervened in *Domenech* to claim entitlement to a portion of that award.[7] Ambush's intervention motion similarly claimed a right to part of the *Franqui* damages award.[8] Second, in July 2015, Ambush filed a twelve-count complaint against ACCJ in federal court (the "2015

---

[5] *See Am. Ctr. for Civ. Just., Inc. v. Ambush*, No. 09-cv-233 (D.D.C.) (filed Feb. 6, 2009).

[6] *See Ambush*, 2020 WL 1652244, at *4.

[7] *Id.* at *4, 12.

[8] *Id.* at *5, 12. The *Domenech* court denied Ambush's motion, and two Puerto Rico appellate courts denied Ambush's appeals.

3

Action").[9]  ACCJ filed for bankruptcy in March 2018, resulting in a stay of the 2015 Action.  Third, in April 2018, Ambush filed a proof of claim against ACCJ based on the same allegations he asserted in the 2015 Action (the "Proof of Claim").

ACCJ thereafter filed the present adversary proceeding against Ambush asserting two claims: (1) expungement of the Proof of Claim; and (2) a counterclaim for breach of the Settlement Agreement.[10]  On January 27, 2021, the Bankruptcy Court granted summary judgment in favor of Ambush on ACCJ's counterclaim.  The Court held, among other things, that Ambush's conduct related to the *Domenech* Action, 2015 Action, and Proof of Claim did not breach the Settlement Agreement.  The District Court affirmed the Bankruptcy Court's decision,[11] and ACCJ now appeals to this Court.

---

[9] *See Ambush v. Engelberg*, No. 15-cv-1237 (D.D.C.) (filed July 31, 2015).

[10] The Bankruptcy Court granted summary judgment in favor of ACCJ on the expungement claim on March 23, 2020.  *Ambush*, 2020 WL 1652244, at *1.  That decision has not been appealed.

[11] *Am. Ctr. for Civ. Just., Inc. v. Ambush*, No. 21-cv-2267, 2021 WL 5757403, at *1 (D.N.J. Dec. 3, 2021).  The Bankruptcy Court alternatively held that ACCJ's claim was time barred to the extent it arose from Ambush's conduct in *Domenech*.  The District Court reversed on this point, holding that the Bankruptcy Court applied the incorrect statute of limitations. *Ambush*, 2021 WL 5757403, at *4–5.  Ambush cross-appeals that limited aspect of the District Court's decision.

Because we agree with the Bankruptcy and District Courts that ACCJ has failed to demonstrate a breach of contract arising from the *Domenech* Action, we need not reach the statute of limitations issue.  We will therefore dismiss Ambush's cross-appeal as moot.

## II. Jurisdiction and Standard of Review

The Bankruptcy Court had jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a)–(b), 1334. The District Court had jurisdiction under 28 U.S.C. § 158(a)(1). We have jurisdiction under 28 U.S.C. § 158(d)(1).

Our review of a bankruptcy court's decision "duplicates that of the district court and we view the bankruptcy court decision unfettered by the district court's determinations."[12] We review the Bankruptcy Court's grant of summary judgment *de novo*.[13] "We will affirm if, drawing all inferences in favor of the nonmoving party, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[14]

The Settlement Agreement has a choice-of-law clause that both parties agree is enforceable. So, we will apply District of Columbia ("DC") law to ACCJ's breach of contract claim.[15]

---

[12] *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (quotation omitted).

[13] *In re Revel AC Inc.*, 909 F.3d 597, 601 (3d Cir. 2018).

[14] *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 492 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)); *see also* Fed. R. Bankr. P. 7056.

[15] "In evaluating whether a contractual choice-of-law clause is enforceable, federal courts . . . apply the choice-of-law rules of the forum state, which in this case is New Jersey." *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). "[W]hen parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Id.* (citing *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) (emphasis omitted)).

## III. Analysis

ACCJ argues that the Bankruptcy Court erred by holding, as a matter of law, that Ambush did not breach the Settlement Agreement through his conduct in the *Domenech* Action, 2015 Action, or ACCJ's bankruptcy. We disagree.

A settlement agreement is a contract governed by "basic contract principles."[16] The proper interpretation of a contract is a legal question under DC law.[17] And the plain language of a contract governs the parties' rights and liabilities "unless the written language is not susceptible of a clear and definite undertaking."[18]

### A. The *Domenech* Action

ACCJ first alleges that Ambush's motion to intervene in the *Domenech* estate action violated the Settlement Agreement's proscription against "any form of claim or litigation against the other arising out of or related to the subject matter of . . . the *Franqui* Litigation or the services performed by any of the parties in connection with the *Franqui* Litigation."[19] Though Ambush's intervention motion ostensibly related to the services Ambush provided in *Franqui*, the Bankruptcy Court held that the motion was directed at the Guzman Estate and, therefore, it was not litigation "against" ACCJ.

---

[16] *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000); *see also In re Est. of Drake*, 4 A.3d 450, 453 (D.C. 2010) ("Settlement agreements are construed under general principles of contract law. Accordingly, we enforce a valid and binding settlement agreement just like any other contract." (citations and quotation marks omitted)).

[17] *Abdelrhman v. Ackerman*, 76 A.3d 883, 887–88 (D.C. 2013).

[18] *Id.* at 888 (quotation omitted).

[19] *See* Appellant's 1st Step Br. at 13, 17–22.

Prior to Ambush's attempted intervention in *Domenech*, the Puerto Rico court had ordered that a portion of the funds awarded to the Guzman Estate in *Franqui* would be held by the court pending a future decision on its proper distribution.[20] As both ACCJ and Ambush asserted a right to those funds, ACCJ argues that Ambush's motion was tantamount to a "claim" against it because Ambush's success would necessarily limit the remaining funds available to ACCJ. But as the Bankruptcy Court correctly recognized, and despite the "quasi-adversarial position" of the parties, "[e]ach party had a claim against the *estate*, not one another."[21]

When Ambush moved to intervene, ACCJ had no immediate right to the funds sought by Ambush because they were being held by the *Domenech* court pending a further ruling. The plain language of the Settlement Agreement unambiguously precludes only claims and litigation "against" ACCJ itself and does not purport to encompass all litigation that could potentially harm ACCJ's interests. So Ambush's conduct in the *Domenech* Action did not breach his contract with ACCJ.

## B. The 2015 Action

ACCJ next asserts that Ambush breached the Settlement Agreement by filing the 2015 Action. Ambush's 2015 complaint alleged two sets of claims against ACCJ, which we discuss separately.

---

[20] *Ambush*, 2020 WL 1652244, at *4.

[21] A-3025.

First, Ambush alleged that ACCJ committed various breaches of the Settlement Agreement. The plain language of the contract expressly permits the parties to bring an action for breach of the settlement if the action is "filed in the United States District Court for the District of Columbia" and includes a "request that the case be assigned to the judge . . . who presided over the [2009 Action]."[22] The complaint Ambush filed in the 2015 Action complied with both of these conditions. Thus, Ambush did not breach the Settlement Agreement merely by alleging that *ACCJ* breached the Settlement Agreement.[23]

Second, Ambush alleged that ACCJ violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The Settlement Agreement does not contain a general release of *all* claims between the parties, and so we must determine whether the allegations supporting the RICO claims "aris[e] out of or relate[] to" the 2009 or *Franqui* Actions.[24]

Though the 2015 complaint is not particularly clear, it appears that Ambush's RICO claims arise from conduct outside of the scope of the Settlement Agreement. For example, under headings titled "Facts Establishing Defendants' Pattern of RICO Activity" and "Defendants' RICO Enterprise Exposed in Four Cases," Ambush alleges that ACCJ and

---

[22] A-144 ¶ 6.

[23] ACCJ resists this conclusion by claiming that Ambush's allegations were "grandiose fishing expeditions that were devoid of even a scintilla of factual support." Appellant's 1st Step Br. at 24. ACCJ does not further support its claim of frivolity, but regardless, the Settlement Agreement contains no language suggesting that frivolous claims for breach of the agreement themselves constitute breaches of the agreement. *See The Cuneo L. Grp., P.C. v. Joseph*, 669 F. Supp. 2d 99, 119 (D.D.C. 2009) ("If a party breaches the settlement agreement, the non-breaching party may choose either to enforce the agreement or to rescind it and sue on the original claims." (quotation omitted)) (applying DC law).

[24] A-143 ¶ 6.

other defendants committed fraud and other various wrongdoings while participating in several litigations *other than* the 2009 and *Franqui* Actions.[25] ACCJ points to a prefatory sentence in the 2015 complaint vaguely stating that Ambush's RICO allegations were "closely related" to his allegations that ACCJ breached the Settlement Agreement.[26] Fatally, however, ACCJ has made no attempt to tie any specific facts alleged in the 2015 Action to the subject matter of either the 2009 or *Franqui* Actions. The Bankruptcy Court therefore properly granted summary judgment in favor of Ambush with respect to the 2015 Action.

## C. The Proof of Claim

ACCJ last argues that Ambush committed an independent breach of the Settlement Agreement by filing the Proof of Claim in ACCJ's bankruptcy case. The Proof of Claim is grounded exclusively on the complaint filed in the 2015 Action.

As the 2015 Action did not breach the agreement, neither did Ambush's efforts to continue prosecuting the 2015 Action through the Proof of Claim. Nothing in the Settlement Agreement suggests that a party who filed an otherwise valid enforcement action must abandon its rights if the other party files for bankruptcy.[27]

---

[25] A-108–17 ¶¶ 200–26.

[26] A-61.

[27] As ACCJ has failed to demonstrate even a single breach of the Settlement Agreement, we need not reach ACCJ's contention that Ambush's conduct amounts to twenty-seven distinct "breaches" for purposes of the contract's liquidated damages clause.

9

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court. We will dismiss Ambush's cross-appeal as moot.