*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-AA-0796

LUIGI BUITRAGO, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

DISTRICT OF COLUMBIA OFFICE OF RISK MANAGEMENT AND DEPARTMENT OF HEALTH, INTERVENORS.

On Petition for Review of an Order of the District of Columbia Department of Employment Services Compensation Review Board
(2022-CRB-000032)

(Argued March 5, 2024      Decided August 15, 2024)

*David M. Snyder* for petitioner.

*Lucy E. Pittman*, Senior Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General were on the brief, for respondent and intervenors.

Before BLACKBURNE-RIGSBY, *Chief Judge*, DEAHL, *Associate Judge*, and GLICKMAN, *Senior Judge*.

DEAHL, *Associate Judge*: Luigi Buitrago injured his back in 2006 while on the job for the D.C. Department of Health. He received temporary total disability payments intermittently over the next decade, during those periods when he was unable to work. This particular case started in 2017, when Buitrago found himself out of work again and sought to reinstate his benefits. An Administrative Law Judge concluded that Buitrago was entitled to both retroactive and prospective benefits and issued an order to that effect in 2019. Though Buitrago received his prospective benefits in a timely manner, his retroactive benefits were paid seven months late, entitling him to a penalty for late payments under D.C. Code § 1-623.24(g). The Office of Risk Management then awarded Buitrago an additional $33,260 as a late-payment penalty. Buitrago disagreed with that calculation—he thought the penalty should have been significantly higher—so he sought administrative review.

This appeal concerns the proper avenue for that review. Buitrago appealed ORM's penalty calculation to the Office of Administrative Hearings, which found that it had jurisdiction to address Buitrago's claim and awarded him about $58,000 in penalties—roughly $25,000 more than what ORM had determined. ORM appealed that decision to the Compensation Review Board, arguing that Buitrago could only appeal the penalty calculation to ORM's Chief Risk Officer and then, if necessary, to the Superior Court. The CRB agreed with ORM and vacated OAH's award of additional penalties to Buitrago on the ground that penalty determinations

do not fall within the specific set of ORM decisions that OAH is statutorily authorized to review. Buitrago now appeals the CRB's judgment. Our decision in *Frazier v. D.C. Dep't of Emp't Servs.*, 229 A.3d 131 (D.C. 2020), compels us to agree with the CRB. We therefore affirm.

## I. Factual and Procedural Background

Buitrago injured his back in 2006 when, while he was working as a public health analyst for the D.C. Department of Health, a tent collapsed and fell on him. He was awarded temporary total disability benefits shortly thereafter, sparking nearly twenty years of administrative ping-pong between ORM, OAH, and the CRB. The bulk of the back-and-forth is not relevant to the claim here, which arises from a May 2019 compensation order awarding Buitrago $113,503 in retroactive benefits. Because ORM was seven months late in paying out those benefits, Buitrago sought an additional penalty payment per D.C. Code § 1-623.24(g) (directing that when an award is not timely paid, "the award shall be increased by an amount equal to one month of the compensation for each 30-day period that payment is not made").

ORM agreed that Buitrago was owed a late-payment penalty and it issued an amended notice of benefits awarding Buitrago an additional $33,260. Buitrago disagreed with the method ORM used to calculate the penalty and filed both a challenge with ORM's Chief Risk Officer and a request for a hearing with OAH.

The Chief Risk Officer ruled first, and he affirmed ORM's calculation and informed Buitrago that he could appeal the decision to the Superior Court.  Buitrago opted not to appeal to the Superior Court, and instead renewed his request for a hearing before OAH to challenge the Chief Risk Officer's determination.

ORM responded by arguing that OAH had no authority to review the Chief Risk Officer's decision.  The relevant statutory provisions provide that ORM "administer[s] and decide[s] all questions arising under" the public sector workers' compensation program established by the Comprehensive Merit Personnel Act.  D.C. Code § 1-623.02a and D.C. Code § 1-1518.01.  OAH has limited appellate jurisdiction to review ORM's decisions, but only in three instances.  OAH can review (1) initial awards for or against compensation, (2) certain changes from temporary total disability to permanent partial disability, and, relevant to this appeal, (3) "modifications" of awards.  D.C. Code §§ 1-623.24(b), (d), -623.06a(a).  A claimant seeking an appeal of an ORM decision that does not fall into one of these three categories may appeal the decision only to the ORM Chief Risk Officer and then, if desired, to the Superior Court.  7 D.C.M.R. §§ 156.1, 156.7(a).  So the question in this case boils down to whether ORM's decision issuing a late-payment penalty fits within the third category above as a "modification" of an award.  If so, OAH had jurisdiction to review ORM's determination; if not, that decision could be challenged further only in Superior Court.

Confronted with that issue, OAH concluded that it had jurisdiction to hear Buitrago's appeal because a penalty awarded under D.C. Code § 1-623.24(g) constituted a "modification" of Buitrago's benefit award, one of the types of workers' compensation claims over which OAH has jurisdiction. *See* D.C. Code § 1-623.24(d). Per OAH, because § 1-623.24(g) stated that a penalty meant that a claimant's original compensation award "shall be increased," it constituted a "modification . . . rather than a new award." OAH then reviewed ORM's calculation and ordered ORM to pay Buitrago about $25,000 more than what ORM had directed, or about $58,000 in total penalties.

ORM then appealed to the CRB and reiterated its argument that OAH did not have jurisdiction to review the Chief Risk Officer's determination. The CRB agreed, positing that the "true question" in the case was "whether penalty awards are 'modifications' under D.C. Code § 1-623.24(d)." Relying on this court's opinion in *Frazier*, the CRB found that a "modification" under the CMPA referred to "a reduction in or terminations of benefits because of a change to the claimant's condition, or to a corrective compensation decision where there is strong compelling evidence that the initial decision was in error." More specifically, the CRB concluded that modifications include:

> determinations that the claimant's disability has ceased or lessened, the disabling condition is no longer causally related to the employment, the claimant's condition has

> changed from a total disability to a partial disability, the employee has been released to return to work, or the initial decision was in error.

The CRB found that penalty calculations "do not fall within any of those categories" and so OAH did not have statutory authority to review them. Thus, the CRB vacated OAH's penalty order, leaving ORM's order undisturbed.

Buitrago timely petitioned this court for review. When he filed his petition, he also filed a petition for initial hearing en banc—in other words, asking this court to skip the review of a three-judge division of this court—arguing that this court "should reconsider the *Frazier* decision to determine whether [it] is consistent with the humanitarian purpose of" of public sector workers' portion of the CMPA. The en banc court denied that petition, so the case is now before this division.

## II. Analysis

Buitrago argues on appeal that the CRB erred in vacating OAH's order because *Frazier* was wrongly decided, and he urges us to overturn *Frazier*. He also asserts that OAH's determination that he is owed additional penalties was correct and should be reinstated. We decline Buitrago's invitation to overturn *Frazier* and do not consider the merits of OAH's penalty determination as it is not properly before us.

In *Frazier*, this court considered what constituted an award "modification" under § 1-623.24(d). 229 A.3d at 136-37 & n.5. In that case, the claimant had previously obtained temporary total disability benefits and was later seeking a permanent schedule award. *Id.* at 134-35; *see* D.C. Code § 1-623.07(a) (schedule of compensation to public-sector employees with certain work-related permanent disabilities). ORM denied that claim, and we held that OAH did not have jurisdiction to review that denial because the claimant was not seeking a modification of an award. Our reasoning, in a nutshell, was that the word "modification," as used in § 1-623.24(d), "refers to *a reduction in or termination[] of* benefits," not the denial of claims for additional benefits that a claimant seeks to challenge. *Id*. at 136 (emphasis added). To elucidate the point, we explained that the statutory term "modification" refers to (1) "a determination that the claimant's disability has ceased or lessened," (2) "the disabling condition is no longer causally related to the employment," (3) "the claimant's condition has changed from a total disability to a partial disability," (4) "the employee has been released to return to work," or (5) "the initial decision was in error." *Id*. at 137 n.5 (cleaned up) (citing D.C. Code § 1-623.24(d)(4)(A)-(E)). We are now bound by this conclusion, and the imposition or calculation of a late-payment penalty simply does not fall within any of the above categories, so that it is not a "modification" under *Frazier*'s core analysis.

Buitrago counters that, prior to *Frazier*, the CRB had endorsed his view "that OAH could resolve penalty disputes," *see Harrison v. District of Columbia Dep't of Emp't Servs.*, CRB No. 16-084, 2016 WL 6659076, at \*9 (Oct. 20, 2016), so he urges us to adopt the CRB's interpretation of the statute, rather than follow *Frazier*. We are not free to do that—this court, and not the CRB, is the superior authority when interpreting the District's statutes. So to whatever extent the CRB's decision in *Harrison* conflicts with our decision in *Frazier*, it is *Frazier* that controls. The CRB acknowledged as much in this very case. While the CRB noted that *Harrison*'s "unusual [litigation] history" gave it "pause,"[1] it recognized that it was nonetheless "bound by *Frazier*" which compels the conclusion "that penalty awards are not modifications."

Buitrago further complains that *Frazier* "severely limit[s] the opportunities for an injured worker to have their claims heard by a neutral factfinder" and is inconsistent with the "humanitarian purpose" of the CMPA. Whether he is right about that or not is simply not for us to say. A division of this court has no authority to revisit *Frazier*, as Buitrago seemed to recognize when he filed his petition for

---

[1] *See generally D.C. Pub. Schs. v. D.C. Dep't of Emp. Servs.*, 262 A.3d 213, 226-27 (D.C. 2021) (describing how the District voluntarily dismissed its appeal in *Harrison* after it was argued and submitted and further describing it as "troubling that the District did not mention *Harrison* at any point in the *Frazier* litigation").

initial hearing en banc.  It is a "fundamental rule in our jurisdiction that no division of this court will overrule a prior decision of this court." *Bost v. United States*, 178 A.3d 1156, 1176-77 (D.C. 2018) (internal quotation marks omitted); *see also M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).  There are two notable exceptions to that rule permitting us not to follow otherwise binding precedent, and they are: (1) when that otherwise binding precedent itself contravened prior precedent, in which case we must follow the earlier decision, *see Thomas v. United States*, 731 A.2d 415, 420 n.6 (D.C. 1999) ("Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one."); and (2) when the decision has been "substantially undermined by subsequent Supreme Court decisions," *Washington v. Guest Servs., Inc.*, 718 A.2d 1071, 1075 (D.C. 1998) (quoting *Frendak v. United States*, 408 A.2d 364, 379 n.27 (D.C. 1979)).  Neither exception applies here, so like the CRB, we conclude that we are bound by *Frazier*.

Finally, we address Buitrago's argument that OAH has "inherent authority and jurisdiction to ensure that its orders are being complied with by [ORM]."  Because imposing and calculating penalties is just one means of enforcing OAH orders, the argument goes, OAH must retain jurisdiction to review penalty calculations because that power is naturally attendant to its authority to issue the underlying award in the first place.

As a threshold matter, there is at least an argument that Buitrago forfeited this argument because he failed to raise it in his opening brief, and an appellant will typically forfeit a "claim by failing to raise it in their opening brief." *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 n.7 (D.C. 2013). This is a somewhat unusual case, though, because while Buitrago did not raise this claim in his opening brief, he did raise it before the District filed its responsive brief—Buitrago first pressed this point in his opposition to the District's motion for summary affirmance, and then he pressed it further at oral argument. We doubt that the forfeiture doctrine—which we often apply where an appellant makes an argument for the first time in a reply brief or at oral argument—applies here. Its driving principle is that a party should not be able to raise a new argument at a point where the opposing party does not have a fair opportunity to respond to it. *See Adams v. Hinchman*, 154 F.3d 420, 424 n.7 (D.C. Cir. 1998) ("It is our practice not to consider any issue raised for the first time in a reply brief, a point at which the opposing side has no opportunity to respond." (internal quotation marks omitted)); *see also Herbert v. Nat'l Acad. Of Sci.*, 974 F.2d 192, 196 (D.C. Cir. 1992) (considering such arguments "would be manifestly unfair to the appellee who . . . has no opportunity for a written response"). Here, the District had ample opportunity to respond to this claim in its written pleadings: the District filed both a reply in support of its motion for summary affirmance and its responsive brief *after* Buitrago raised this argument. In any event, even if we did

have discretion to deem this claim forfeited, we would not exercise that discretion here for the reason just stated: the District had a fair opportunity to respond to it.

While we therefore consider this claim on its merits, Buitrago is still out of luck. An administrative agency "may not act in excess of its statutory authority." *D.C. Off. of Tax and Revenue v. Shuman*, 82 A.3d 58, 69 (D.C. 2013) (internal quotation marks omitted). While agencies have some limited "inherent authority" to create and enforce procedural rules, that authority is grounded in "the principle that the hearing must be governed by well established rules of procedure," and it is a quite "limited authority over what is commonly required to regulate aspects of the hearing process such as pleadings, discovery, testimony, and attorney behavior." *Ramos v. D.C. Dep't of Consumer & Reg. Affs.*, 601 A.2d 1069, 1073-74 (D.C. 1992) (cleaned up). Reviewing ORM's calculation of a penalty award is simply not in the realm of an agency's inherent authority to establish and enforce its procedures. In any case, whatever inherent authority OAH might have enjoyed was clearly displaced by D.C. Code §§ 1-623.24(b),(d), and 1-623.06a(a), which specifically outline the limited types of ORM decisions that OAH has authority to review.

We thus agree with CRB's decision that OAH was not authorized to review ORM's penalty calculations. The argument that penalty calculations constitute modifications is foreclosed by *Frazier*, which we as a division cannot revisit.

Buitrago's entreaties that we revisit *Frazier* are beyond our authority as a division, though he may seek to renew his request for en banc review in response to this decision. And his appeal to OAH's inherent authority to enforce its orders is a non-starter because an agency's inherent authority is simply not so broad as Buitrago envisions, and even if it were, it has been supplanted by statute. We thus agree with the CRB that OAH does not have authority to review ORM penalty calculations.

### III. Conclusion

For the foregoing reasons, we affirm the CRB's decision.

*So ordered.*