John C. HAZEL, et al., Appellants,

v.

Marion S. BARRY, Jr., Mayor of the District of Columbia, et al., Appellees.

No. 89–1306.

District of Columbia Court of Appeals.

Argued April 17, 1990.
Decided Aug. 24, 1990.

Stephen W. Grafman, with whom Frederick W. Yette and Ned I. Miltenberg, Washington, D.C., were on the brief, for appellants.

Donna M. Murasky, Asst. Corp. Counsel, with whom Herbert O. Reid, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

TERRY, Associate Judge:

This case involves a dispute over funding for the District of Columbia Public Library. In March 1989 the Council of the District of Columbia enacted the Fiscal Year 1990 Budget Request Act ("the Budget"), D.C. Act 8–15, 36 D.C.Reg. 2490 (1989), which allocated $18,849,000 to the Library for Fiscal Year 1990. The Council sent the Budget, as enacted, to the Mayor, who approved it and forwarded it to the President; he in turn transmitted it to Congress.[1] Later, however, the Mayor—acting pursuant to his authority and duty to balance the budget[2]—reduced this sum by four percent, or $779,000. Appellants[3] brought

1. See D.C.Code § 47–304 (1987).

2. See D.C.Code §§ 47–301(a)(1), 47–310(a)(9), 47–313(d) (1987).

3. Appellants are the members of the Library's Board of Trustees, its Director, and one of its patrons. We reject appellees' contention that these appellants lack standing to sue. It cannot be seriously doubted that the Trustees and the Director have a fiduciary duty to the Library. They have satisfied the basic standing requirements by showing that, in their official capacity, they have "'suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]' ... and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision'...." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). We conclude that the Trustees and the Director have standing, and thus we need not decide whether the patron has standing as well. *Cf. Hooker v. Edes Home,* 579 A.2d 608, 617–618 (D.C.1990).

this action for declaratory and injunctive relief against the Mayor, the City Administrator, and the Director of the Department of Finance and Revenue, contending—as they contend here—that because the Library is a "statutory independent agency," the Mayor did not have the authority to effect this reduction. We reject appellants' argument and affirm the trial court's judgment in favor of the Mayor and his co-defendants. In doing so, however, we emphasize that our holding applies only to the Public Library; it does not necessarily extend to funding disputes involving other agencies, entities, or branches of the District of Columbia government.

I

The District of Columbia Public Library was chartered by Congress in 1896 as a "free public library ... and a supplement of the public educational system of said District." D.C.Code § 37–101 (1990). Services are currently provided at a central facility in downtown Washington, the Martin Luther King Memorial Library, and at twenty-five branches. The system is administered by the Board of Library Trustees, which is identified as a "statutory independent agency" in D.C.Code § 1–299.6 (1989 Supp.). An "independent agency" is defined elsewhere in the Code as "any agency of the government of the District with respect to which the Mayor and the Council are not authorized by law, other than this subchapter [of the Administrative Procedure Act], to establish administrative procedures...." D.C.Code § 1–1502(5) (1987). Although this language indicates that the Mayor does not have authority to control daily operations or to determine or implement Library policy, other provisions of the Code establish that decisions relating to appropriations are exclusively within the control of the Mayor and the Council.

In particular, the Mayor "is authorized to include in his annual estimates for appropriation such sums as he may deem necessary for the proper maintenance of said library...." D.C.Code § 37–106 (1990).[4]

Some time before the beginning of Fiscal Year (FY) 1990, the Mayor proposed an appropriation of $18,744,000 for the Library. The Council, however, in enacting the Budget, authorized $18,849,000 in funding for the Library, an increase of $105,000 over the Mayor's proposal. While the Budget was making its way through the legislative process, the Council, sitting as a Committee of the Whole, recommended that certain reductions be made in overall spending by the District of Columbia. Among these reductions were $6,100,000 for equipment and $7,350,000 for personnel. Significantly, the Committee did not specify where the cuts were to be made; it did state, however, that reductions were to come from what were cryptically identified as "agencies under the control of the Mayor and excluding police, fire and corrections...." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE OF THE WHOLE, Report on Bill 8–150, at 32 (March 21, 1989). The Committee did not define the term "agencies under the control of the Mayor."

Notwithstanding the Committee's recommendation to make reductions, the Council adopted the Budget without doing so by a voice vote on March 21, 1989. 36 D.C.Reg. at 2505. Thus the Council acted with the understanding that the total spending approved was not necessarily the exact sum that would ultimately be spent. Section 103 of the Budget makes this clear:

> Whenever in this Act an amount is specified within an appropriation for particular purposes or objects of expenditure, the amount, unless otherwise specified, shall be considered as the maximum

4. The trial judge relied principally on section 37–106 in holding that the Mayor acted within the scope of his lawful authority when he trimmed the Library's budget. He observed that Congress and the Council, in writing legislation, had

> found ways to articulate the differences when [they find] differences in the ... placement of power on budgets....

> [T]hey've chosen not to allocate such independence on budgetary matters here, and indeed have left it to the determination of the Mayor as to what shall be appropriate amounts for the various purposes utilized in the budget of the D.C. Public Library.

amount that may be expended for said purpose or object rather than an amount set apart exclusively therefor.

36 D.C.Reg. at 2498. On April 6, 1989, the Mayor signed the Budget and sent it to the President and Congress for their consideration.

On September 14, 1989—before Congress had completed action on the 1990 District of Columbia Appropriations Act—the Mayor issued Mayor's Memorandum 89–32, which outlined proposed budgetary adjustments. This Memorandum was designed to take the reductions recommended by the Committee of the Whole and apply them to specific spending areas in the Budget. The Memorandum said that salary and equipment reductions were allocated to all "agencies under the Mayor's control, excluding the police, fire, and corrections departments, as planned in the FY 1990 Appropriations Act." Once again, the phrase "agencies under the Mayor's control" was not defined. The Memorandum also stated:

Unallocated rescissions in the District's pending FY 1990 Appropriations Act require this government to reduce appropriations and expenditures for personal services by $31,550,000, for energy by $2,000,000, and for equipment by $6,100,000. To achieve the stipulated reductions, this memorandum issues budget control ceilings to District agencies and directs agency heads to enter, as appropriate, their revised FY 1990 budget allocations in the Financial Management System (FMS).

In particular, the Mayor's Memorandum reduced funding for the Library by $779,000, broken down into categories: $113,000 for salaries, $102,000 for energy costs, $528,-000 for equipment, and $36,000 for the elimination of one salaried position.[5]

Congress then passed the District of Columbia Appropriations Act ("the Appropriations Act"),[6] and on November 21, 1989, the President signed it. Although it included the full $18,849,000 which had originally

been requested for the Library in the Budget enacted by the Council, Congress made clear that the Appropriations Act was not a funding guarantee. Section 103 of the Appropriations Act contained language identical to that adopted by the Council, with some additions:

Whenever in this Act an amount is specified within an appropriation for particular purposes or objects of expenditure, such amount, unless otherwise specified, shall be considered as the maximum amount that may be expended for said purpose or object rather than an amount set apart exclusively therefor, [with two exceptions not relevant here].

103 Stat. at 1275. Congress also directed that the Mayor reduce expenditures for energy, equipment, and personal services "within one or several of the various appropriation headings in this Act." *Id.* at 1273. One of those headings is the "Public Education System," which includes the Public Library. The Appropriations Act does not contain the phrase "agencies under the control of the Mayor" or anything similar.

## II

Appellants argue that the Mayor had no authority to reduce the funds allocated to the Public Library in both the Budget enacted by the Council and the Appropriations Act enacted by Congress. They maintain that it was the "mandate" of both the Council (sitting as a Committee of the Whole) and the Mayor himself that reductions would be imposed only on "agencies under the control of the Mayor." They reason that because the Library is a "statutory independent agency," it is not "under the control of the Mayor," and that the Mayor therefore disregarded binding instructions when he cut the Library's funding by $779,000. Appellants' argument fails for three reasons: (1) the Mayor has not only the power but the duty to balance the Budget, regardless of any sums previ-

---

5. Appellants argue that the entire $779,000 has been improperly withheld from the Library. Because they do not object to the apportionment of the reduction, we do not consider whether it is permissible for the Mayor to specify how the reductions are to be implemented.

6. District of Columbia Appropriations Act of 1990, Pub.L. No. 101–168, 103 Stat. 1267 (1989).

ously appropriated; (2) the classification of the Library as a "statutory independent agency" does not make the Library independent of the Mayor's fiscal authority; and (3) neither the Budget enacted by the Council nor the Appropriations Act enacted by Congress contains any language requiring that reductions be made only in the funding of "agencies under the Mayor's control."

D.C.Code § 47–301(a)(1) (1987) requires the Mayor of the District of Columbia to submit a balanced budget to the Council.[7] To ensure that this goal is met, the Mayor has been granted specific, well-defined powers:

> Subject to the limitations in § 47–313, the Mayor shall have charge of the administration of the financial affairs of the District and to that end he shall:
>
> \*   \*   \*   \*   \*   \*
>
> (9) Apportion the total of all appropriations and funds made available during the fiscal year for obligation so as to prevent obligation or expenditure thereof in a manner which would indicate a necessity for deficiency or supplemental appropriations for such fiscal year, and with respect to all appropriations or funds not limited to a definite period, and all authorizations to create obligations by contract in advance of appropriations, apportion the total of such appropriations or funds or authorizations so as to achieve the most effective and economical use thereof.

D.C.Code § 47–310(a)(9) (1987).[8] In the dispute now before us, the Mayor was confronted with the necessity of implementing budget reductions. Under sections 47–301(a)(1), 47–310(a)(9), and 47–313(d) of the Code,[9] the Mayor not only has the authority to reduce funding below the level of appropriations in order to balance the budget, but is required to do so.

Appellants contend, however, that because the Board of Library Trustees is listed as a "statutory independent agency" in D.C.Code § 1–299.6 (1989 Supp.), this term confers a status on the Library which puts it beyond the Mayor's budgetary reach. We can find no authority supporting this view. The legislative history of section 1–299.6 and its predecessors sheds no light on the meaning of the term "statutory independent agency." The District of Columbia Administrative Procedure Act defines "independent agency" as "any agency of the government of the District with respect to which the Mayor and the Council are not authorized by law ... to establish administrative procedures," D.C.Code § 1–1502(5) (1987), but this tells us nothing about who has fiscal authority over such an agency. Appellees argue in their brief that section 1–299.6 "does not purport to be the sole source of authority for defining the relationship between the Mayor and the Library Board...." We find this argument persuasive because of the presence in the Code of section 37–106, which expressly empowers the Mayor "to include in his annual [proposed budget] such sums as he may deem necessary for the proper mainte-

7. Section 47–301(a)(1) directs the Mayor to prepare each annual budget "on the assumption that proposed expenditures ... shall not exceed estimated resources from existing sources and proposed resources[.]" In addition, the District of Columbia Self–Government and Governmental Reorganization Act of 1973, Pub.L. No. 93–198, 87 Stat. 776 (1973), commonly known as "the Home Rule Act," provides that the federal Anti–Deficiency Act, which prohibits the federal government from spending money in excess of its available resources during a fiscal year, applies to the District of Columbia as well. D.C. Code § 47–313(e) (1987).

8. The Mayor is also authorized to "prepare and submit to the Council such proposed supplemental or deficiency budget recommendations

as in his judgment are necessary on account of laws enacted after transmission of the budget or are otherwise in the public interest." D.C.Code § 47–301(c) (1987).

9. D.C.Code § 47–313(c) (1987) prohibits the Council from approving "any budget which would result in expenditures being made by the District government, during any fiscal year, in excess of all resources which the Mayor estimates will be available from all funds available to the District for such fiscal year." D.C.Code § 47–313(d) (1987) provides:

> The Mayor shall not forward to the President for submission to Congress a budget which is not balanced according to the provision[s] of subsection (c) of this section.

nance of said library...." We hold, accordingly, that the Library's status as a "statutory independent agency" gives it no legitimate claim to exemption from the authority of the Mayor to reduce expenditures throughout the executive branch of the District government in order to balance the budget. We agree with the trial court's ruling that, although the Library was independent of the Mayor "in terms of its policy choices, personnel choices, in a whole plethora of areas that are articulated in [D.C.Code § 37–105 (1990) ]," [10] it was subject to the Mayor's authority in financial matters under section 37–106.

Finally, appellants maintain that the Mayor's actions were *ultra vires* because the Council's Committee Report and his own Memorandum 89–32 stated that spending reductions would affect only "agencies under the control of the Mayor." This is, we conclude, an ambiguous term: whether the Library (or any other agency) is "under the control" of the Mayor depends entirely on the situation and the type of "control" being discussed. We need not decide precisely what it means in this case, however, because this language is nowhere to be found in the only place where it really counts: in the Appropriations Act passed by Congress and signed by the President.[11] The fact that Congress—and, indeed, the Council itself in the Budget *as enacted*—imposed no such restriction on the Mayor's power to cut expenditures convinces us that the presence of this language in the Committee Report and the Mayor's Memorandum is without legal force. At best it is precatory, the expression of a hope, a statement of a goal earnestly sought. But

10. Section 37–105 sets forth in detail the powers and duties of the Board of Library Trustees, which include determining library policy, establishing "rules necessary for the management of the library," and hiring and firing library personnel.

11. In *Evans v. Washington,* 106 Daily Wash.L. Rptr. 1929 (D.C.Super.Ct. September 7, 1978) (Belson, J.), the court held that, although the Mayor had the power to set a budget ceiling for the Board of Education while the budget was making its way through the legislative process, he could not "direct [or] control the amounts and purposes" of the Board's expenditure of

when push comes to shove, and the Mayor has to wield his budget-cutting scalpel, it has no binding effect.

The judgment of the Superior Court is therefore

*Affirmed.*

funds actually appropriated by Congress. *Id.* at 1937. *Evans* is not directly in point here because its holding is based on language in the Home Rule Act, *supra* note 7, which explicitly vests certain powers in the Board of Education and restricts the Mayor's budgetary authority over the Board. It does at least suggest, however, that any power claimed by the Mayor to restrict the expenditure of appropriated funds must be expressly conferred by statute; he cannot simply rely on his status as chief executive officer of the District of Columbia. With respect to the Public Library, we have found such statutory authority in D.C.Code § 37–106.